**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| **SHELTON FEDERAL GROUP, LLC** | * | Case No 15-00623 (Chapter 7) |
| Debtor. | * | |
| *   *   *   *   *   *   * | * * * * * * | |
| **INDUSTRIAL BANK,** 4907 George Avenue, NW Washington, DC 20011, | * * | Adversary No. _____ |
| Plaintiff, | * | |
| v. | * | |
| **TURNER CONSTRUCTION COMPANY,** 375 Hudson Street, 6th Floor New York, New York 10014, | * * * | |
| **TOMPKINS/BALLARD JOINT VENTURE,** 375 Hudson Street, 6th Floor New York, New York 10014, | * * | |
| **TOMPKINS BUILDERS INC.** 375 Hudson Street, 6th Floor New York, New York 10014, | * * | |
| and | * | |
| **S.B. BALLARD CONSTRUCTION COMPANY**, 2828 Shipps Corner Road Virginia Beach, Virginia 23453 | * * * | |
| Defendants. | | |
| *   *   *   *   *   *   * | * * * * * * | |

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Industrial Bank, hereby files this Complaint for Breach of Contract, and in support, states:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a non-core proceeding.

4.      This is an adversary proceeding governed by Federal Rule of Bankruptcy Procedure 7001 *et seq.*

5.      The Plaintiff consents to entry of final orders or judgments by the bankruptcy court.

### THE PARTIES

6.      On December 1, 2015 (the "Petition Date") the Shelton Federal Group, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Columbia (the "Court").

7.      The Plaintiff, Industrial Bank, is a District of Columbia chartered bank doing business at 4812 Georgia Avenue, NW, Washington, DC 20011. Industrial Bank is a secured creditor of the Debtor.

8.      Upon information and belief, Turner Construction Company ("Turner") is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 375 Hudson Street, 6th Floor, New York, New York 10014.

9.      Upon information and belief, Tompkins Builders, Inc. ("Tompkins") is a domestic business corporation organized under the laws of the District of Columbia with a principal place of business at 375 Hudson Street, 6th Floor, New York, New York 10014.

10.     Upon information and belief, S.B. Ballard Construction Co. ("Ballard") is a domestic business corporation organized under the laws of the Commonwealth of Virginia with a principal place of business at 2828 Shipps Corner Road, Virginia Beach, Virginia 23453.

11.     Upon information and belief, Tompkins and Ballard formed and are partners in a joint venture known as Tompkins/Ballard Joint Venture (the "Joint Venture") that was formed on or before February 22, 2012.

12.     Upon information and belief, Turner is the parent of Tompkins and has the same payment obligations as the Joint Venture under the contract documents for the RCJ Project (as defined herein).

13.     Marc E. Albert, Esq. (the "Trustee") is the duly qualified and acting Chapter 7 trustee of the estate of Shelton Federal Group, LLC (the "Debtor").

## INTRODUCTION

14.     The Debtor subcontracted with Turner and the Joint Venture, or their respective subsidiaries, venturers and affiliates (collectively, the "Contractors"), on a variety of commercial construction projects in the years leading up to the Petition Date.

15.     In order to finance its operations, including performing under contracts with the Contractors, the Debtor entered into a loan relationship with Industrial Bank wherein it assigned and granted a security interest in all of its accounts receivable to Industrial Bank. In connection therewith, and relevant to the project described in this Complaint, the Debtor, Industrial Bank and Turner entered into an agreement providing for contract payments to be made directly to Industrial Bank.

16.     The Debtor began experiencing financial distress in or before April 2014.

3

17.     On or around April 17, 2014, Liquid, Inc. ("Liquid"), who is also a subcontractor of the Debtor on the RCJ Project (as defined herein), filed a Complaint against the Debtor, NorSouth Construction Company of Georgia, Inc. ("NorSouth"), Travelers Casualty and Surety Company of America and Bank of America, N.A. arising out of the Debtor's breach of contract in connection with a sub-contract between the Debtor and Liquid on a project located at 1132 Dove Street, Richmond, Virginia (the "Dove Street Litigation").

18.     By way of the Dove Street Litigation, Liquid alleged that the Debtor, among other things, (i) failed to make payments to Liquid for work performed by Liquid under a sub-subcontract between the Debtor and Liquid and (ii) NorSouth, Travelers Casualty and Surety Company of America and Bank of America, N.A agreed to pay Liquid the unpaid balance due by the Debtor under the terms of a payment bond on the construction project.

19.     NorSouth filed a Cross Claim against the Debtor in the Dove Street Litigation for breach of contract and on account of indemnification claims against the Debtor for payments made by NorSouth to suppliers/sub-subcontractors of the Debtor on account of liens and payment bond claims made against NorSouth.

20.     Separate judgments were entered against the Debtor in the Dove Street Litigation on August 19, 2014 in favor of Liquid and NorSouth in the amounts of $133,846.57 and $784,814.98, respectively.

21.     Upon information and belief, the Contractors learned of the Debtor's financial distress and entered into a variety of contracts, agreements and understandings designed to advance their respective positions above those of the Debtor's other contractors, subcontractors, suppliers and creditors, including Industrial Bank.

22.    At or around that time, the Contractors stopped delivering payments to Industrial

Bank pursuant to the terms of their agreement and began delivering payments to the Debtor and/or

the Debtors sub-contractors in violation of the agreements with Industrial Bank.

## FACTUAL ALLEGATIONS

### The Industrial Bank Line of Credit

23.    On or around August 31, 2011, the Debtor and Industrial Bank entered into a

financing relationship (as modified from time to time, the "Line of Credit") wherein Industrial

Bank originally agreed to make principal advances to the Debtor for operating capital in the

Debtor's business of up to $250,000.00, the terms and amount of which were subsequently

modified to increase the maximum principal amount of the Line of Credit to $500,000.00.

24.    On or around November 20, 2014, the Debtor and Industrial Bank entered into a

second financing relationship (together with the "Line of Credit", the "Loans") in the principal

amount of $60,693.00.

25.    In connection with the Loans, the Debtor and Industrial Bank entered into a

Commercial Security Agreement dated August 31, 2011, which was supplemented by that certain

Commercial Security Agreement dated November 20, 2014, wherein the Debtor pledged and

provided Industrial Bank with a security interest in, among other things, all of the Debtor's

accounts receivable.

### Richmond City Jail Subcontract

26.    The Joint Venture entered into a general contract with the City of Richmond,

Virginia, for the construction of the Richmond City Jail (the "RCJ Project") on or before February

22, 2012.

27.     On or around February 22, 2012, the Debtor entered into an Agreement with the Joint Venture (the "RCJ Subcontract") for the Debtor to perform and furnish work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for Earthwork/Utilities/Pavements for and at the RCJ Project.

28.     The Debtor assigned, set over and transferred all of the Debtor's rights and interests to all monies due or to become due to the Debtor under the RCJ Subcontract to Industrial Bank.

29.     In connection therewith, the Debtor and Turner, acting on behalf of the Joint Venture, each executed a Request and Consent to Assignment of Contract Payment (the "RCJ Subcontract Assignment") entered into as of the 8th day of January, 2014.

30.     Pursuant to Section 2 of the RCJ Subcontract Assignment, Turner, acting on behalf of the Joint Venture, acknowledged that Industrial Bank was the assignee of the payments due or to become due to the Debtor under the RCJ Subcontract.

31.     Pursuant to Sections 3, 4 and 6 of the RCJ Subcontract Assignment, all payments due and owing to the Debtor under the RCJ Subcontract were to be made via joint check and delivered to Industrial Bank.

32.     Pursuant to Section 5 of the RCJ Subcontract Assignment, Turner, acting on behalf of the Joint Venture, acknowledged and consented to the assignment to Industrial Bank of all of the Debtor's right, title and interest in all of the payments due, or to become due, to the Debtor under the RCJ Subcontract.

33.     The RCJ Subcontract Assignment was intended to confer rights and benefits to Industrial Bank, including the right to receive payments for amounts due and owing to the Debtor under the RCJ Subcontract Assignment via joint checks delivered to Industrial Bank.

6

34.     The RCJ Subcontract Assignment expressly provides for the provision of rights to
Industrial Bank, including the right to receive payments for amounts due and owing to the Debtor
under the RCJ Subcontract Assignment via joint checks delivered to Industrial Bank.

35.     The RCJ Subcontract Assignment was executed by the Debtor at the request of
Industrial Bank.

36.     The RCJ Subcontract Assignment was executed by Turner, acting on behalf of the
Joint Venture, at the request of Industrial Bank.

37.     The RCJ Subcontract Assignment was executed by the Debtor with the intention of
conferring rights and benefits upon Industrial Bank and inducing Industrial Bank to make advances
to the Debtor on the Line of Credit.

38.     The RCJ Subcontract Assignment was executed by Turner, acting on behalf of the
Joint Venture, with the intention of conferring rights and benefits upon Industrial Bank and
inducing Industrial Bank to make advances to the Debtor on the Line of Credit.

39.     The Joint Venture initially performed under the RCJ Subcontract Assignment by
making certain payments to the Debtor and Industrial Bank via joint check.

40.     The Joint Venture subsequently breached the RCJ Subcontract Assignment by
making the following payments under the RCJ Subcontract:

| Check Date | Payee | Amount | Check No. |
|---|---|---|---|
| 10/28/2014 | Debtor/SB Cox | $96,087.75 | 101420 |
| 11/13/2014 | Debtor/SB Cox | $254,357.75 | 101443 |
| 12/11/2014 | Debtor/SB Cox | $169,680.45 | 101468 |
| 1/8/2015 | Debtor/Branscome | $49,352.50 | 101502 |
| 1/8/2015 | Debtor/SB Cox | $48,154.55 | 101504 |
| 2/3/2015 | Debtor/Branscome | $56,054.60 | 101531 |
| 2/3/2015 | Debtor/Southern Striping | $21,237.25 | 101546 |
| 3/31/2015 | Debtor/SB Cox | $21,645.39 | 101588 |
| 3/31/2015 | Debtor/Southern Striping | $8,011.40 | 101589 |

| 4/28/2015 | Debtor/Branscome | $52,290.85 | 101629 |
| 4/28/2015 | Debtor/SB Cox | $21,917.15 | 101630 |
| 9/1/2015 | Debtor/Branscome | $19,231.41 | 101702 |
| 9/1/2015 | Debtor/SB Cox | $29,837.50 | 101703 |
| 9/1/2015 | Debtor/Southern Striping | $2,523.35 | 101704 |
| 9/17/2015 | Debtor/Sunbelt Rentals | $4,501.86 | 101708 |
| 9/17/2015 | Debtor/Sovereign Paving | $2,627.87 | 101709 |
| 9/17/2015 | Debtor/Landsaver | $4,550.00 | 101710 |
| 9/17/2015 | Debtor/Liquid | $2,237.40 | 101712 |
| 10/20/2015 | Debtor/Theros | $32,557.14 | 101716 |

collectively, the "RCJ Subcontract Payments".

41.     All of the RCJ Subcontract Payments were transmitted or sent to a person or entity other than Industrial Bank.

42.     None of the RCJ Subcontract Payments was made payable to the Debtor and Industrial Bank by joint check.

**The Joint Venture's Failure to Turn Over the Remaining Retainage Funds**

43.     The Joint Venture is currently in possession of not less than $11,277.58 in retainage funds due to the Debtor under the RCJ Subcontract (the "Retainage").

44.     To the extent the Retainage does not constitute property of the Debtor's estate, the Retainage has been assigned and transferred to Industrial Bank and the Joint Venture is obligated to deliver the Retainage to Industrial Bank pursuant to the RCJ Subcontract Assignment.

**The Virginia Union University Subcontract**

45.     On or around April 10, 2013, the Debtor entered into an Agreement with Turner (the "VUU Subcontract 1") for the Debtor to perform and furnish certain Erosion & Sediment Control Package for and at the Virginia Union University Living Learning Center (the "VUU Project").

46.     On or around July 26, 2013, the Debtor entered into an Agreement with Turner (the "VUU Subcontract 2") for the Debtor to perform and furnish certain Earthwork, Excavation, Site Utilities, Asphalt & Site Concrete for and at the VUU Project.

47.     Together, the VUU Subcontract 1 and VUU Subcontract 2 are referred to herein collectively as the "VUU Subcontract".

48.     The Debtor assigned, set over and transferred all of the Debtor's rights and interests to all monies due or to become due to the Debtor from Turner under the VUU Subcontract to Industrial Bank.

49.     The Debtor and Turner each executed a Request and Consent to Assignment of Contract Payment (the "VUU Subcontract Assignment") entered into as of the 8th day of January, 2014.

50.     Pursuant to Section 2 of the VUU Subcontract Assignment, Turner acknowledged that Industrial Bank was the assignee of the payments due or to become due to the Debtor under the VUU Subcontract.

51.     Pursuant to Sections 3, 4 and 6 of the VUU Subcontract Assignment, all payments due and owing to the Debtor under the VUU Subcontract were to be made via joint check and delivered to Industrial Bank.

52.     Pursuant to Section 5 of the VUU Subcontract Assignment, Turner acknowledged and consented to the assignment to Industrial Bank of all of the Debtor's right, title and interest in all of the payments due, or to become due, to the Debtor under the VUU Subcontract.

53.     The VUU Subcontract Assignment was intended to confer rights and benefits to Industrial Bank, including the right to receive payments for amounts due and owing to the Debtor under the VUU Subcontract Assignment via joint checks delivered to Industrial Bank.

54.     The VUU Subcontract Assignment expressly provides for the provision of rights to Industrial Bank, including the right to receive payments for amounts due and owing to the Debtor under the VUU Subcontract Assignment via joint checks delivered to Industrial Bank.

55.     The VUU Subcontract Assignment was executed by the Debtor at the request of Industrial Bank.

56.     The VUU Subcontract Assignment was executed by Turner at the request of Industrial Bank.

57.     The VUU Subcontract Assignment was executed by the Debtor with the intention of conferring rights and benefits upon Industrial Bank and inducing Industrial Bank to make advances to the Debtor on the Line of Credit.

58.     The VUU Subcontract Assignment was executed by Turner with the intention of conferring rights and benefits upon Industrial Bank and inducing Industrial Bank to make advances to the Debtor on the Line of Credit.

59.     Turner initially performed under the VUU Subcontract Assignment by making certain payments to the Debtor and Industrial Bank via joint check.

60.     Turner breached the VUU Subcontract Assignment by making the following payments under the VUU Subcontract:

| Check Date | Payee | Amount | Check No. |
|---|---|---|---|
| 2/3/2015 | Debtor/Branscome | $7,146.76 | 187662 |
| 2/3/2015 | Debtor/Branscome | $267.26 | 187646 |
| 7/9/2015 | Debtor | $2,896.06 | 248975 |
| 7/9/2015 | Debtor | $7,103.94 | 249207 |

(collectively, the "VUU Subcontract Payments").

61.     All of the VUU Subcontract Payments were transmitted or sent to a person or entity other than Industrial Bank.

10

62.     None of the VUU Subcontract Payments was made payable to the Debtor and Industrial Bank by joint check.

## Count I
### (Breach of Contract – RCJ Subcontract Assignment)

63.     The allegations contained in paragraphs 1 through 62 are incorporated by reference as though fully set forth herein.

64.     All of the Debtor's rights and interests to all monies due or to become due to the Debtor from the Joint Venture under the RCJ Subcontract were assigned, set over and transferred to Industrial Bank prior to the RCJ Subcontract Payments.

65.     The Debtor and the Joint Venture entered into the RCJ Subcontract Assignment prior to the RCJ Subcontract Payments.

66.     Industrial Bank is an intended third party beneficiary of the RCJ Subcontract Assignment.

67.     The Joint Venture breached the RCJ Subcontract Assignment by making the RCJ Subcontract Payments payable to the Debtor and/or to the Debtor and third parties other than Industrial Bank via joint check.

68.     The Joint Venture breached the RCJ Subcontract Assignment by delivering the RCJ Subcontract Payments to persons other than Industrial Bank.

69.     Industrial Bank was damaged by the Joint Venture's breach of the RCJ Subcontract Assignment in the amount of not less than $896,856.17, but not in an amount in excess of the debt owed to Industrial Bank.

70.     Tompkins is obligated to Industrial Bank for the debts and obligations of the Joint Venture.

71.     Ballard is obligated to Industrial Bank for the debts and obligations of the Joint Venture.

72.     Turner is obligated to Industrial Bank for the debts and obligations of Tompkins.

WHEREFORE, for the foregoing reasons, the Plaintiff, Industrial Bank, respectfully requests the Court enter an Order:

A.     Granting judgment in favor of Industrial Bank and against the Joint Venture, Tompkins, Ballard and Turner, jointly and severally, for breach of contract in the amount of not less than $896,856.17, but not in an amount in excess of the debt owed to Industrial Bank; and

B.     Granting Industrial Bank such other and further relief as is just and equitable

### Count II
### (Breach of Contract – VUU Subcontract Assignment)

73.     The allegations contained in paragraphs 1 through 62 are incorporated by reference as though fully set forth herein.

74.     All of the Debtor's rights and interests to all monies due or to become due to the Debtor from Turner under the VUU Subcontract were assigned, set over and transferred to Industrial Bank prior to the VUU Subcontract Payments.

75.     The Debtor and Turner entered into the VUU Subcontract Assignment prior to the VUU Subcontract Payments.

76.     Industrial Bank is an intended third party beneficiary of the VUU Subcontract Assignment.

77.     Turner breached the VUU Subcontract Assignment by making the VUU Subcontract Payments payable to the Debtor and/or to the Debtor and third parties other than Industrial Bank via joint check.

78.    Turner breached the VUU Subcontract Assignment by delivering the VUU Subcontract Payments to persons other than Industrial Bank.

79.    Industrial Bank was damaged by Turner's breach of the VUU Subcontract Assignment in the amount of not less than $17,414.02, but not in an amount in excess of the debt owed to Industrial Bank.

WHEREFORE, for the foregoing reasons, the Plaintiff, Industrial Bank, respectfully requests the Court enter an Order:

A.    Granting judgment in favor of Industrial Bank and against Turner for breach of contract in the amount of not less than $17,414.02, but not in an amount in excess of the debt owed to Industrial Bank; and

B.    Granting Industrial Bank such other and further relief as is just and equitable.

Dated:  August 3, 2017          /s/ Scott W. Foley
                                 Scott W. Foley, Bar No. 466848
                                 swf@shapirosher.com
                                 Joseph A. Pulver, Bar No. 991093
                                 jap@shapirosher.com
                                 Shapiro Sher Guinot & Sandler
                                 250 W. Pratt Street, 20th Floor
                                 Baltimore, MD 21201-3147
                                 Phone:  (410) 385-4234

                                 *Attorneys for Industrial Bank*