The document below is hereby signed.

Signed: December 30, 2017



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHELTON FEDERAL GROUP, LLC, | ) | Case No. 15-00623 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| INDUSTRIAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 17-10025 |
| TURNER CONSTRUCTION COMPANY, _et al._, | ) | |
| | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendants. | ) | |
| | ) | |
| | ) | |

MEMORANDUM DECISION AND ORDER
<u>GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>

All of the defendants have moved to dismiss this adversary proceeding. One defendant, S.B. Ballard Construction Company ("Ballard"), has filed a _Motion to Dismiss_ (Dkt. No. 15) pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to bankruptcy under Fed. R. Bankr. P. 7012. The remaining defendants, Turner Construction Company ("Turner"), Tompkins/Ballard Joint Venture

(the "Joint Venture"), and Tompkins Builders, Inc. ("Tompkins") have filed a separate *Motion to Dismiss* (Dkt. No. 16) pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  As these motions are dependent on the same facts and will be resolved in the same manner, I will decide them together.  For the reasons set forth below, I will grant the motions to dismiss pursuant to Rule 12(b)(6) for failure of the complaint to state a claim upon which relief can be granted.

I

Taking all facts that are well-pled in the complaint as true, the facts pertinent to these motions are as follows.  Before the filing of its bankruptcy case, the debtor engaged in construction work.  The plaintiff lent funds to the debtor and at all relevant times held one or more security interests in all of the debtor's accounts receivable to secure repayment of the loans.  The plaintiff contends that amounts the debtor earned under two subcontracts should have been paid to the plaintiff pursuant to assignment agreements relating to the two subcontracts.[1]

*The City Jail Assignment Agreement.*  Sometime around February 22, 2012, the defendants Tompkins and Ballard formed a

---

[1] Copies of the Assignment Agreements are attached to the motions to dismiss.  The plaintiff does not dispute the genuineness of the those copies or the propriety of the court's treating them as part of the complaint in applying Rule 12(b)(6).

Joint Venture as part of a general contract with the City of Richmond for the construction of the Richmond City Jail ("City Jail Project"). The debtor entered into a subcontract with the Joint Venture to provide labor, material, equipment, and other things necessary for Earthwork/Utilities/Pavements on the City Jail Project. In connection with that subcontract, the debtor entered into a Request and Consent to Assignment of Contract Payments ("City Jail Assignment Agreement") with Turner on September 12, 2014, wherein all payments due to the debtor under the subcontract would be made payable and sent directly to the plaintiff.

The Joint Venture initially made payments to the debtor and the plaintiff by joint check. However, several payments were not made by joint check to the debtor and the plaintiff, but to the debtor directly or other parties. The Joint Venture is currently in possession of not less than $11,277.58 in retainage funds due to the debtor under the City Jail Project subcontract.

*The University Assignment Agreement*. Sometime around April 10, 2013, the debtor entered into a subcontract with Turner "to perform and furnish certain Erosion & Sediment Control Package" for the Virginia University Living Learning Center ("University Project"). Later, around July 26, 2013, the debtor entered into another subcontract with Turner "to perform and furnish certain Earthwork, Excavation, Site Utilities, Asphalt & Site Concrete"

3

for the University Project.  On January 8, 2014, the debtor entered into a Request and Consent to Assignment of Contract Payments ("University Assignment Agreement") with Turner which had the same terms as the City Jail Assignment Agreement.

Turner initially made payments to the debtor and plaintiff by joint check in accordance with the University Assignment Agreement.  However, several payments were not made by joint check to the debtor and the plaintiff, but to the debtor directly or other parties.

*The Terms of the Assignment Agreements*.  Important provisions in the Assignment Agreements include:

> 3.  **Subcontract Payments:**  The Assignment requires that all payments due under the Subcontract ("Subcontract Payments") should:
>
>> a) be made payable to Industrial Bank and
>>
>> b) be sent directly to Industrial Bank . . .
>
> 4.  **Request to Transmit Payments to Industrial Bank:** Shelton therefore hereby requests that Turner, notwithstanding anything to the contrary contained in the Subcontract, transmit any and all payments which may become due to Shelton from Turner under the Subcontract by joint check payable to Shelton and Industrial Bank . . .

***

> 6.  **Payments by Turner:**  Turner agrees to make any and all payments due or to become due to Shelton from Turner under the Subcontract by joint check payable to Shelton and Industrial Bank . . .

***

> 10.  **No Third-Party Beneficiaries:**  This Request is

> intended to confer rights and benefits upon the parties hereto only and not upon any other person or entity, except as expressly provided herein. No person or entity other than the parties hereto has any legally enforceable rights under this request.

The Assignment Agreements also included an indemnification clause at paragraph 9 where the debtor promised to indemnify Turner:

> from any and all claims, demands, suits, actions, causes of action, loss, liability, damages, costs, and expenses, including reasonable attorneys' fees, suffered, paid or incurred by any of them by reasons of, relating to, and/or arising out of this Request or the Assignment or both, including without limitation, any claims of Industrial bank.

Paragraph 12 makes Virginia law the governing law of the Assignment Agreements.

*Relief Sought by the Complaint*. After the debtor commenced its bankruptcy case on December 2, 2015, the plaintiff filed its complaint commencing this adversary proceeding.

Under Count I, the plaintiff alleges that Ballard, the Joint Venture, Tompkins, and Turner breached the City Jail Assignment Agreement when they made payments owed to the debtor under the City Jail Project to the debtor directly and other parties. The plaintiff also contends that to the extent that the retainage funds of not less than $11,277.58 due to the debtor under the City Jail Project subcontract do not constitute property of the bankruptcy estate, the Joint Venture is obligated to deliver those funds to the plaintiff pursuant to the City Jail Assignment Agreement.

5

Under Count II, the plaintiff alleges that Turner breached the University Assignment Agreement when it made payments owed the debtor under the University Project to the debtor directly and other parties.

II

Turner, The Joint Venture, and Tompkins argue that the court does not have subject matter jurisdiction to hear this case, and contend that the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Bankruptcy courts are courts of limited jurisdiction. *Porter Capital Corporation v. Hamilton (In re Hamilton)*, 282 B.R. 22, 25 (Bankr. W.D. Okl. 2002). "Under 28 U.S.C. § 1334 and § 157, bankruptcy courts are only empowered to hear cases that either arise under title 11 or that arise in or relate to a case under title 11." *Sindram v. United States Marshals Service (In re Sindram)*, No. 09-10041, 2010 WL 1611104, at *2 (Bankr. D.D.C. Apr. 20, 2010). A case is "related to" a bankruptcy case when the outcome of the case could conceivably have an effect on the administration of the bankruptcy estate. *Virginia ex rel. Integra REC LLC v. Countrywide Securities Corp.*, 92 F. Supp. 3d 469, 473 (E.D. Va. 2015). There does not need to be a certainty of effect on the administration of the bankruptcy estate for the court to have jurisdiction. *Nuveen Municipal Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).

The defendants contend that the outcome of this case will have no effect on the underlying bankruptcy case.  The plaintiff, on the other hand, alleges three ways in which the court has "related to" subject matter jurisdiction over this case.  First, the debtor has entered into the Assignment Agreements containing indemnification clauses in favor of the defendants.  Second, the plaintiff is a creditor of the debtor, and any relief the plaintiff receives will reduce the amount of the plaintiff's claim against the estate in the bankruptcy case.  Finally, many of the payments at issue in this case are also at issue in another adversary proceeding, Adv. Pro. No. 17-10024, pending between the chapter 7 trustee and the defendants.

Whether the indemnification clauses would create "related to" jurisdiction in this case, which is a case in chapter 7, is unclear.  As I have noted previously, "whether subject matter jurisdiction could rest on an indemnification agreement, when this case is pending in chapter 7, not a reorganization case in chapter 11, is at best uncertain." *Ludwig & Robinson v. Yelverton Law Firm, PLLC (In Re Yelverton)*, No. 11-10001, 2011 WL 2413485, at *2 (Bankr. D.D.C. June 10, 2011).  Nevertheless, I do not need to decide that issue to find that the court does have "related to" subject matter jurisdiction in this adversary proceeding.

The test is whether there is any conceivable way, even if not certain, that the outcome of this adversary proceeding will

7

affect the administration of the underlying bankruptcy estate. Here, the plaintiff is a creditor seeking payments that were supposed to be made under the Assignment Agreements as part of its liens on the debtor's accounts receivable. It is conceivable that any recovery the plaintiff would realize under this adversary proceeding would affect the amount that the plaintiff is entitled to receive pursuant to the plaintiff's claim against the bankruptcy estate.

Additionally, under Count I, the plaintiff is seeking $11,277.58 in retainage funds and payments made to the debtor's subcontractors under the City Jail Project that the chapter 7 trustee is seeking in Adversary Proceeding No. 17-10024. Any recovery by the plaintiff in this case, or any rulings the court may enter in relation to the plaintiff's and debtor's rights respectively to those funds, may have an effect on the recovery the debtor's estate could obtain in that other adversary proceeding. Therefore, I hold that the court does have subject matter jurisdiction.

III

A. Scope of Review of 12(b)(6) Motion to Dismiss

All the defendants have entered motions to dismiss under Fed. R. Civ. P. 12(b)(6). Under a Rule 12(b)(6) motion, "the court 'construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts as true.'" *Boone v.*

*Hornsby (In re Hornsby)*, No. 15-41528, 2016 WL 5107057, at *1 (Bankr. S.D. Ga. Sep. 19, 2016) (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009)).  A court may only grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However, "[r]ule 12(b)(6) allows a court to dismiss claims based on dispositive issues of law."  *Hicks v. City of Myrtle Beach*, No. Civ.A.4-04CV22603-25, 2006 WL 346427, at *1 (D.S.C. Feb. 13, 2006).  When an issue is purely legal, "there is no inherent barrier to reaching the merits at the 12(b)(6) stage."  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.3d 1221, 1226 (D.C. Cir. 1993) (citation omitted).

The dispositive issue here is whether the plaintiff may bring an action under the Assignment Agreements as a third-party beneficiary.  The Assignment Agreements make clear that the plaintiff cannot prevail as a matter of law.

B. Legally Enforceable Rights Under the Assignment Agreements

The defendants contend that the plaintiff is not a third-party beneficiary of the Assignment Agreements because while the Assignment Agreements grant the plaintiff certain rights and benefits, paragraph 10 in the Assignment Agreements only grants the parties "legally enforceable rights."  The plaintiff, on the other hand, contends that the defendants neglect the previous

clause in paragraph 10 that states: "This Request is intended to confer rights and benefits upon the parties hereto only and not upon any other person or entity, *except as expressly provided herein*." (emphasis added). The plaintiff contends that the defendants' reading of the Assignment Agreements would make this clause meaningless, and, under rules of contract construction, courts will give meaning to every clause under a contract.

Whether a person or entity is a third-party beneficiary is a matter of non-bankruptcy law. The Assignment Agreements state that they will be governed by Virginia law. Virginia has long recognized that "a party may sue to enforce the terms of a contract even though he is not a party to the contract." *Levine v. Selective Ins. Co. of America*, 462 S.E.2d 81, 83 (Va. 1995). This right was codified as § 55-22 of the Virginia Code.[2] *Id.* However, a party must show that the parties of the contract

---

[2] Section 55-22 of the Virginia Code provides:

An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

10

"clearly and definitely intended [the contract] to confer a benefit upon him" before that party may enforce the terms of the contract as a third-party beneficiary.  *Valley Landscape Co., Inc. v. Rolland*, 237 S.E.2d 120, 122 (Va. 1977).  "[W]hether a contract [is] intended for the benefit of a third person [is] generally regarded as [an issue] of construction and . . . the intention of the parties is determined by the terms of the contract as a whole."  *Id.* at 123.  Where the contract is clear, the court will look no further than the four corners of the contract.  *See Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 255 S.E.2d 518, 523 (Va. 1979).

The plaintiff's right to sue depends upon the meaning of paragraph 10.  Paragraph 10 provides that no person or entity is granted any benefits under the Assignment Agreements "except as expressly provided herein."  It goes further to read, "No person or entity other than the parties hereto has any legally enforceable rights under this request."  Reading those two provisions together, this paragraph says that the only rights and benefits, including legally enforceable rights, or the right to sue, granted to any nonparty outside, or inside, the contract are those expressly granted.  Therefore, one must look at what express rights and benefits are granted to the plaintiff under the Assignment Agreements.

The plaintiff is correct that the Assignment Agreements

expressly grant the plaintiff benefits.  Paragraphs 3, 4 and 6 clearly state that Turner will convey payments owed to the debtor under its respective subcontracts to the plaintiff.  The plaintiff is clearly a beneficiary under the Assignment Agreements, but the issue is whether the plaintiff, as a beneficiary, has a legally enforceable right under the Assignment Agreements.  Paragraph 3 grants the plaintiff the right and benefit of having all payments due the debtor under the debtor's subcontracts on the City Jail Project and the University Project payable to the plaintiff.  Paragraphs 4 and 6 grant the plaintiff the right to a joint check for all payments due to the debtor from Turner under the debtor's subcontracts.  However, none of these paragraphs grant plaintiff a right to sue for a breach of the Assignment Agreements.  This right must come from somewhere else.

     Generally, such a right would come from § 55-22 of the Virginia Code.  However, the Assignment Agreements specifically say: "This Request is intended to confer rights and benefits upon the parties hereto only and not upon any other person or entity, except as expressly provided herein."  The only provision expressly granting anyone a right to sue is in the concluding sentence of the same paragraph, providing "No person or entity other than the parties hereto has any legally enforceable rights under this request."  Accordingly, paragraph 10 limits that right

12

to sue to only the parties to the Assignment Agreements. While § 55-22 would generally grant the plaintiff the right to sue as a party under the Assignment Agreements, it does not make the plaintiff a party to the Assignment Agreements.

The parties to the Assignment Agreements clearly provided that the plaintiff does not have a right to sue under the Assignment Agreements, and the court is obligated to enforce the Assignment Agreements as the parties executed them. *W. Alton Jones Foundation v. Chevron U.S.A. Inc.(In re Gulf Oil/Cities Service Tender Offer Litigation)*, 725 F.Supp. 712, 733 (S.D.N.Y. 1989) ("[I]f two contracting parties expressly provided that some third party who will be benefitted by performance shall have no legally enforceable right, the courts should effectuate the express intent by denying the third party any direct remedy.")(citing 4 Corbin on Contracts, § 777 at 25 (1951)). The plaintiff cannot bring a suit under the Assignment Agreements. Counts I and II are dependent upon the plaintiff having a right to sue under the Assignment Agreements, and therefore, Counts I and II cannot be maintained, and the adversary proceeding must be dismissed.

IV

It is thus

ORDERED that the request in the *Motion to Dismiss* (Dkt. No. 16) filed by Turner Construction Company, Tompkins/Ballard Joint

Venture, and Tompkins Builders, Inc. for dismissal of this adversary proceeding pursuant to Rule 12(b)(1) is DENIED.  It is further

ORDERED that S.B. Ballard Construction Company's *Motion to Dismiss* (Dkt. No. 15) pursuant to Rule 12(b)(6) is GRANTED.  It is further

ORDERED that the request in the *Motion to Dismiss* (Dkt. No. 16) pursuant to Rule 12(b)(6) filed by Turner Construction Company, Tompkins/Ballard Joint Venture, and Tompkins Builders, Inc. for dismissal of this adversary proceeding pursuant to Rule 12(b)(6) is GRANTED.  It is further

ORDERED that a judgment follows dismissing this adversary proceeding with prejudice.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.